**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LANCE BILBERRY** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:20-cv-00470** |
| | § | |
| **JPMORGAN CHASE BANK, N.A.** | § | |
| | § | |
| ***Defendant.*** | § | |

**JPMORGAN CHASE BANK'S MOTION TO STAY OR, IN THE ALTERNATIVE, CONTINUANCE OF REMAINING DEADLINES FOR SEVEN MONTHS AND CONTINUANCE OF TRIAL SETTING**

Defendant, JPMorgan Chase Bank, N.A. ("JPMC" or "Defendant"), moves this Court to stay this action pending a decision by the United States Supreme Court in *Facebook, Inc. v. Duguid* (No. 19-511). In the alternative, since oral argument in the *Facebook* case was heard on December 8. 2020, Defendant requests that this Court continue all remaining deadlines in this matter for seven months to allow the high Court to issue its ruling. The *Facebook* case will address the critical issue of: "**Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.**'" *See* Petition for a Writ of Certiorari, *Facebook, Inc. v. Duguid*, No. 19-631 (U.S. Oct. 17, 2019); *see also* Certiorari—Summary Dispositions, *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020). This Court should issue the requested stay under its own inherent power to control these proceedings.

JPMC's counsel has conferred with Plaintiff's counsel in an effort to reach a resolution, but the parties have thus far been unable to reach an agreement. As a result, JPMC files this Motion to Stay.

## I. INTRODUCTION

Defendant moves this Court to stay this action pending a decision by the United States Supreme Court in *Facebook, Inc. v. Duguid* (No. 19-511) ("Facebook"). The ruling in *Facebook* will have a profound impact on the viability of the claims asserted by plaintiff Lance Bilberry ("Plaintiff") under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). Although Chase intends to file a Motion for Summary Judgment because it has no record that Mr. Bilberry ever revoked consent, such a Motion may be unnecessary depending upon the Supreme Court's decision in *Facebook*.

On December 8, 2020, the Supreme Court heard the oral argument in *Facebook* which should resolve the significant circuit split on what constitutes an "automatic telephone dialing system" or "ATDS". The issue before the Supreme Court in *Facebook* is pivotal to Plaintiff's claims here—and to TCPA litigation nationwide—because making a call with an ATDS or using a pre-recorded or artificial voice is a requisite element of the claim. 47 U.S.C. § 227(b)(1).

The TCPA defines an ATDS as equipment "which has the capacity … to store or produce telephone numbers to be called, <u>using a random or sequential number generator</u>[.]" 47 U.S.C. § 227(a)(1)(A) (emphasis added). The Ninth Circuit's decisions in *Facebook* and *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), directly contravene the decisions of the Third, Seventh and Eleventh Circuit Courts of Appeals, which held the TCPA only applies to devices which utilize random and sequential number generators as required by the statute. The Fifth Circuit has not ruled on this issue. In this regard, *Facebook* challenges the Ninth Circuit's broad interpretation of ATDS, which was recently adopted by the Second Circuit Court of Appeals. If the Supreme Court resolves the circuit split by relying on the statutory definition of an ATDS, and not the interpretations offered by the Ninth and Second Circuits, then the scope of Plaintiff's TCPA

claim will be substantially narrowed—to artificial or pre-recorded voice calls only because Chase does not use a random or sequential number generator to make calls.

This Court has broad discretion to stay all proceedings where the resolution of other litigation will "narrow the issues in the pending cases and assist in the determination of the questions of law involved." *Landis v. N. Am. Co.*, 299 U.S. 248, 253 (1936). This case presents the ideal situation for application of *Landis*.

Indeed, a stay of this action will serve the orderly administration of justice and allowing Plaintiff to proceed will prejudice JPMC and this Court. Since the Supreme Court heard oral argument in *Facebook* on December 8, 2020, a decision should be forthcoming. Plaintiff does not allege that any calls are continuing, thus Plaintiff will not be harmed by a relatively brief stay. The current Motion for Summary Judgment deadline in this matter is February 5, 2021, and the trial is set for May 3, 2021.

Accordingly, JPMC respectfully requests that this Court stay the action in its entirety until the Supreme Court decides *Facebook*; or, in the alternative, continue all unexpired deadlines in the matter for seven months to allow for said ruling to be issued so the parties can rely on the forthcoming Supreme Court decision in making decisions how to proceed.

## II. BACKGROUND

### A. Plaintiff's Claims Hinge on the Alleged Use of an ATDS.

According to the Complaint, Plaintiff alleges that "Defendant initiated automated calls to Plaintiff using an automatic telephone dialing system and/or artificial or pre-recorded voice" (Doc No. 1, ¶ 23, Complaint (emphasis added)). Plaintiff alleges that after he requested that JPMC stop calling him, Defendant caused "repeated telephone calls to be made by an automatic telephone dialing system to the cell phone number of Plaintiff [which] constitutes multiple violations of the TCPA." (*Id.*, ¶ 23, Complaint (emphasis added)). Based on these conclusory allegations, Plaintiff

asserts causes of action against JPMC for violations of the TCPA. (*Id.* at ¶¶ 22-31).

**B. The Supreme Court Will Determine What Constitutes an ATDS.**

On December 8, 2020, the Supreme Court heard oral argument in *Facebook* regarding the definition of an ATDS. The question presented in *Facebook* is as follows: "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See* Petition for a Writ of Certiorari, *Facebook, Inc. v. Duguid*, No. 19-631 (U.S. Oct. 17, 2019); see also Certiorari—Summary Dispositions, *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020).

The question of what is an ATDS is a critical one for this case and for all TCPA litigation. When the TCPA was enacted, Congress sought to remedy the use of call blasting technology, through which telemarketers would generate millions of calls to randomly-selected numbers, or numbers called in sequence. Because calls were placed to randomly and sequentially generated numbers, calls were placed to individuals as well as telephone lines used by police, firefighters and hospitals. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1307-08 (11th Cir. 2020). As such, Congress defined the equipment subject to the TCPA as equipment "which has the capacity … to store or produce telephone numbers to be called, <u>using a random or sequential number generator</u>[.]" 47 U.S.C. § 227(a)(1)(A) (emphasis added).

Clearly, when businesses attempt to call their customers, they do not randomly or sequentially generate the phone numbers to be called. Accordingly, businesses like JPMC, which are attempting to reach their specific customers, do not use the equipment Congress sought to regulate. *Glasser*, 948 F.3d at 1309. Three circuit courts have held that the TCPA simply does not reach the equipment used by businesses to call their own customers (like that used by JPMC to

call Plaintiff). *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466-67 (7th Cir. 2020)[1]; *Glasser*, 948 F.3d at 1308-09; *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 118-20 (3d Cir. 2018). Instead, these courts held that, to be an ATDS, the equipment must randomly or sequentially generate numbers as the TCPA expressly states. *Gadelhak*, 950 F.3d at 460; *see also Glasser*, 948 F.3d at 1308-1312 (to be an ATDS, a system must call to "randomly or sequentially generated numbers"); *Dominguez*, 894 F.3d at 121 (manual input of numbers takes calls outside scope of TCPA, even if system had "latent capacity" for automatic dialing).[2]

In *Marks*, the Ninth Circuit expressly recognized that the TCPA was enacted to regulate randomly and sequentially generated calls. *See Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time…"). However, the Ninth Circuit concluded that an ATDS also included equipment "that made automatic calls from lists of recipients[.]" *Id*. This interpretation, which requires only that an ATDS be able to automatically dial from a list—a definition that includes within its scope nearly every telephone, including smart phones—does not require that a system utilize "a random or sequential number generator" to constitute an ATDS. *Id*. at 1043.

---

[1] The *Gadelhak* opinion was authored by Justice Barrett.

[2] The Federal Communications Commission ("FCC") previously had issued a rule broadly interpreting the term ATDS, but this rule was struck down as overbroad and contrary to the statutory text. *ACA Int'l v. FCC*, 885 F.3d 687, 697-99 (D.C. Cir. 2018) ("Commission's expansive understanding of 'capacity' in the TCPA is incompatible with a statute grounded in concerns about hundreds of thousands of 'solicitors' making 'telemarketing' calls[.]"). On June 25, 2020, the FCC issued a declaratory ruling providing guidance on the ATDS question, noting the "fact that a calling platform or other equipment is used to make calls or send texts to a large volume of telephone numbers is not probative of whether that equipment constitutes an autodialer under the TCPA." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 P2p All. Petition for Clarification*, No. CG02-278, 2020 WL 3511100 (F.C.C. June 25, 2020). While the "details of the [FCC]'s interpretation of the autodialer definition remains pending in the wake of" *ACA Int'l*, *id*., at *1 n.2, the FCC's recent guidance departs from the rule struck down by *ACA Int'l*, and suggests the FCC may favor a narrower interpretation than it previously adopted.

Prior to the Second Circuit's recent decision in *Duran v. La Boom Disco Inc.*, 955 F.3d 279 (2d Cir. 2020), and the Sixth Circuit's decision in *Wilson v. Pennsylvania Higher Edu. Assistance Agency d/b/a/ American Edu. Serv.***,** 2020 WL 4345341, (6th Cir. July 29, 2020) only the Ninth Circuit's decisions in *Facebook* and *Marks* (described as "outliers" by Justice Barrett in the *Gadelhak* ruling),[3] adopted an ATDS definition broad enough to cover any device which simply has "the capacity to dial stored numbers automatically." *Marks*, 904 F.3d at 1052. In *Duran*, the Second Circuit agreed with the Ninth Circuit's analysis in *Marks* and held that a system constituted an ATDS if it has the ability to store numbers and to automatically dial such numbers, ignoring the plain language of the statute. *Duran*, 955 F.3d at 19284-285.

By granting certiorari in *Facebook*, the Supreme Court is poised to decide the governing standard as to what constitutes an ATDS. If the Supreme Court resolves the circuit split in favor of the Third, Seventh and Eleventh Circuits' interpretation, then the scope of this case will be limited substantially: i.e. only to the calls Plaintiff allegedly received that involved the playing of a pre-recorded message, if any.

## III. ARGUMENT

This Court should enter a stay, or extend all remaining deadlines, so that this Court and the parties can receive clear guidance from the Supreme Court on the pivotal issue of what constitutes an ATDS before substantial additional expense and burden are incurred by either party to this litigation since the dispositive motion deadline is fast approaching.

### A. Legal Standard.

A trial court has broad discretion to stay all proceedings in an action pending resolution of independent proceedings elsewhere. *See Landis*, 299 U.S. at 254. This discretion is "incident to [a

[3] *See Gadelhak*, 950 F.3d at 460 ("The definition of an 'automatic telephone dialing system' would be an outlier within the statutory scheme if it were to capture such a wide swath of everyday conduct.").

district court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quotation marks omitted); *see also Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)(holding "a district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.").

When considering whether to stay proceedings, district courts generally consider:

> (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482 (N.D. Tex. 2016). Each factor need not be present; instead, if the factors on balance weigh in favor of granting a stay, the court may properly stay the action. Importantly, the parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action. *Landis*, 299 U.S. at 254.

**B. The Court Should Stay this Action Pending a Decision in *Facebook*.**

Here, the factors weigh heavily in favor of staying this action pending the Supreme Court's ruling in *Facebook*. First, JPMC unquestionably will be harmed in the form of the expenditure of significant time and litigation expense if a stay is not granted. Absent a stay, JPMC will be forced to prepare a Motion for Summary Judgment and if it is denied, prepare this case for trial which is currently scheduled for May 3, 2021. Staying this case or extending the deadlines pending the decision in *Facebook* will likely impact what claims Plaintiff may pursue. It does not make sense for either party to engage in these efforts where the Supreme Court will provide guidance that will impact the legal issues that remain. As an example, now that oral argument has been conducted

in *Facebook*, JPMC could not possibly brief whether JPMC's dialing system constitutes an ATDS until the Supreme Court provides guidance as to the definition of ATDS. In addition, although parties have not yet been able to settle this matter, the Supreme Court decision may help facilitate a resolution.

The requested stay will also streamline these proceedings by simplifying the issues and preserving judicial resources while the Supreme Court considers the extent to which Plaintiff's claim can proceed. As discussed above, the Supreme Court's decision in *Facebook* could significantly curtail Plaintiff's TCPA claims if not altogether eliminate the claim. Indeed, if *Facebook* is resolved in favor of the majority position, the scope of Plaintiff's TCPA claim would be limited to pre-recorded calls only. Therefore, at minimum, the decision will dictate the scope of the issues and will streamline trial. *See*, *e.g.*, *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *18-22 (E.D. La. Sep. 28, 2020) (granting stay of TCPA claim reasoning:

> …in its significant potential to narrow and refine the issues in this case, a decision in *Facebook* promises to benefit the parties and the Court in a multitude of ways. Among other likely benefits, pausing this litigation in wait of a ruling in *Facebook* may (1) prevent a waste of judicial and party resources in the event that *Facebook* clearly dictates that the plaintiffs' remaining claims are without merit, (2) limit and streamline discovery in the event that the plaintiffs' claims *do* have merit, and (3) reduce the risk of an incorrect decision by sharpening the legal issues at play.

*Id*. at *19-20.

With the benefit of the Supreme Court's decision, the parties will be able to streamline this matter. Indeed, if this action is not stayed and if this Court were to issue any rulings or opinions relating to the definition of an ATDS, or on an interim basis, such a ruling would be subject to appellate review if the Supreme Court reverses the Ninth Circuit's decisions in *Marks* and *Facebook*. A stay is appropriate under these circumstances and several courts around the country have granted stays. *See Hoffman v. Jelly Belly Candy Co.*, 19-cv-01935-JAM-DB, 2020 U.S. Dist.

LEXIS 112663 (C.D. Cal. June 26, 2020), at *5-6 (granting defendant's motion to stay and finding that there is a "significant split that has developed among the circuits" regarding the definition of an ATDS and the "the Supreme Court may not remain silent for much longer waiting for the Supreme Court's decision in . . . [*Facebook*], will allow this [c]ourt to adjudicate the issues before it with far greater certainty. To do otherwise would be a waste of judicial resources and a waste of the parties' time and energy"); *see also Gerstenhaber v. Client Res. Grp., Inc.*, No. 16819CV02004JLSADS, 2020 WL 3883281, at *3 (C.D. Cal. June 19, 2020) (granting the stay and reasoning "it would be unwise [for this Court to endeavor] to predict the Supreme Court's course of action with any certainty" and that the possibility that the Supreme Court automated-call restriction could be invalidated, or further explained, warranted conserving the parties' and the court's resources) (internal quotations omitted); *Palmer v KCI USA, Inc.*, 2020 WL 6441268 (D. Neb. Nov. 3, 2020); *Aleisa v. Square, Inc.*, 2020 WL 5993226 (N.D. Cal. Oct. 9, 2020); *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *18-22 (E.D. La. Sep. 28, 2020); *Sealey v. Chase Bank (U.S.A.), N.A.*, 2020 WL 5814108 (N.D. Cal. Sept. 29, 2020); *Head v. Citigroup Inc.*, 2020 WL 6198950 (D. Ari. Sept. 22, 2020); *Jensen v. Roto-Rooter Servs. Co.*, 2020 U.S. Dist. LEXIS 151256 (W.D. Wash. Aug. 20, 2020).

In light of the clear prejudice to JPMC and inefficiencies in the orderly course of justice that would result if this action is not stayed, Plaintiff simply cannot establish that he will be meaningfully prejudiced by the requested stay. Initially, the requested stay will not be indefinite as the Supreme Court heard oral argument in *Facebook* on December 8, 2020. Therefore, the requested stay will not result in any meaningful delay and will provide valuable insight into the TCPA claims. *See Creasy*, 2020 U.S. Dist. LEXIS 177798, at *19 (holding the "circumstances here firmly favor a stay for several related reasons. All stem from the fact that a decision in *Facebook* promises to significantly hone the issues in this case. In *Facebook*, the Court will resolve

a circuit split concerning the scope of the TCPA's definition of an "automatic telephone dialing system" (ATDS).").

Notably, Plaintiff does not allege any ongoing violations. Thus, there would be no prejudice or damage to Plaintiff should this Court grant the requested stay. *See Chattanond v. Discover Fin. Servs., LLC*, No. 15-cv-08549-RSWL-JCX, 2016 WL 8202736, at *3 (C.D. Cal. Feb. 26, 2016) (granting stay and noting that "Plaintiff does not seek immediate injunctive relief to remedy an ongoing violation of the TCPA."); *Reynolds v. Geico Corp.*, No. 2:16-cv-01940-SU, 2017 WL 815238, at *4 (D. Or. Mar. 1, 2017) ("[A]lthough plaintiff has requested injunctive relief as well, the last text message plaintiff received was in August 2016, . . . and nothing suggests that plaintiff is in jeopardy of receiving additional text messages.").

## IV. CONCLUSION

For the foregoing reasons, JPMC respectfully requests that this Court stay these proceedings pending a decision from the United States Supreme Court in *Facebook*, or in the alternative extend all remaining deadlines for seven months and continue the trial until such time that a decision by the high Court is rendered.

Respectfully submitted,

*/s/ Gregg D. Stevens*

**GREGG D. STEVENS**
State Bar No. 19182500
**FRANK J. CATALANO**
State Bar No. 24052991
**MCGLINCHEY STAFFORD PLLC**
Three Energy Square
6688 N. Central Expressway, Ste. 400
Dallas, Texas 75206
Telephone: (214) 445.2445
Facsimile: (214) 445.2450
gstevens@mcglinchey.com
fcatalano@mcglinchey.com

***Attorney for:***
***JPMorgan Chase Bank, N.A.***

## CERTIFICATE OF CONFERENCE

I, the undersigned, hereby certify to the Court that on December 9, 2020, I have conferred via telephone with Amy Ginsburg, counsel for Plaintiff Lance Bilberry regarding the relief requested in this motion. Counsel is unopposed to this motion. On December 10, 2020 I contacted Ms. Ginsburg to determine whether in lieu of a stay she would agreeable to an extension of the remaining deadlines to give the US Supreme Court time to rule, Ms. Ginsburg has not yet responded to the alterative relief requested.

*/s/ Gregg D. Stevens*
***GREGG D. STEVENS***

## CERTIFICATE OF SERVICE

I hereby certify that on the December 14, 2020, a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing has been forwarded to all counsel of record by operation of the Court's electronic filing system.

*/s/ Gregg D. Stevens*

**GREGG D. STEVENS**